UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-0298-CVE-PJC |
| ) | |
| BOARD OF COUNTY COMMISSIONERS ) | |
| OF CRAIG COUNTY, JIMMY SOOTER, ) | |
| SHEILA FLOYD WILLIAMS, CHISHOLM ) | |
| STANDLEE, and JOHN DOES # 1-10, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court are Plaintiff's Partial Motion for Declaratory Judgment (Dkt. # 99), plaintiff's Partial Motion for Summary Judgment (Dkt. # 100), Defendant Sooter's Motion for Summary Judgment and Brief in Support (Dkt. # 121), and Defendant Williams's Motion and Brief for Summary Judgment (Dkt. # 122). Plaintiff John Doe[1] seeks a declaratory judgment against defendants Board of County Commissioners of Craig County (the Board) and Jimmy Sooter (Sooter) declaring that the practice of medication disbursement at the Craig County Jail (CCJ) violated plaintiff's constitutional rights. Plaintiff also moves for summary judgment against Sooter on plaintiff's claim, pursuant to 42 U.S.C. § 1983, that Sooter violated his constitutional rights. Sooter and defendant Sheila Floyd Williams (Williams) each move for summary judgment on plaintiff's § 1983 claim, and Williams moves for summary judgment on plaintiff's state law negligence claim.

---

[1]   Plaintiff has previously been granted permission to prosecute this case under the pseudonym of John Doe. Dkt. # 23.

## I.

On June 18, 2009, plaintiff was arrested in Craig County, Oklahoma, and transported to the CCJ for booking. Plaintiff remained incarcerated at the CCJ until his release on February 26, 2010. Plaintiff is HIV positive. It is undisputed that, prior to his incarceration, plaintiff's viral count was undetectable and that, at the time of his incarceration, plaintiff was taking the medication Atripla for HIV.

Sooter, as the Sheriff of Craig County, is ultimately responsible for the development of policies and practices at the CCJ regarding the administration of prescription medication to inmates and the procurement of refill prescriptions. The general policy and practice of the CCJ with regard to administering prescription medication and procuring refills is as follows.[2]

When an individual arrives at the CCJ for booking and has his medication with him, that medication is taken by the deputies and put in a medical cart. The deputies then notify the jail's nurse, defendant Williams, that an inmate with medication has been booked. Williams, either by telephone or in person, verifies that the prescription is current and that the pills are actually the medication prescribed. Once Williams has verified the prescription, the medication is listed on a medication log and is distributed to the inmate as required during medication disbursement, which occurs three times per day. If an inmate does not have his medication with him when he is booked, his family may bring it to the CCJ, at which time Williams will verify it pursuant to the above process.

---

[2] While there are disputed issues of fact regarding some specific details of the policies and procedures, these disputes are not material to the dispositive issue in this case.

When an inmate is running low on medication, the jailer dispensing the medication is required to inform the inmate of this fact. In cases where the medication has previously been refilled by the inmate's family and provided to the CCJ, the inmate is expected to notify his family that he will need a refill, and the family is expected to arrange to have the refill brought or sent to the jail. If the inmate is unable to obtain a refill from his family, he may submit a request to see the nurse. The nurse will then either order the medication, see the inmate, or arrange an appointment with the doctor, as necessary. In cases where the jail has previously directly ordered a prescription for an inmate and the inmate is running low, the jail will automatically have the prescription refilled as long as the prescription remains valid. If the prescription is no longer valid and the inmate believes he still needs the medication, the inmate is required to request to see the nurse.

Prior to his incarceration, plaintiff was receiving Atripla through the HIV Drug Assistance Program (HDAP), which is a federally funded program that provides HIV medication to persons who are HIV positive and have demonstrated a financial need. HDAP requires that a participant periodically re-enroll in the program. In order to re-enroll in the program, the participant is required to have blood work done. At the time of his arrest, plaintiff was required to re-enroll in HDAP every three months. Plaintiff had his re-enrollment paperwork and blood work done shortly prior to his arrest on June 18, 2009, and he was officially re-enrolled in HDAP on July 13, 2009. From the time of his arrest until November 13, 2009, plaintiff had a valid prescription for Atripla through the HDAP program and the medication was provided to the CCJ, or arranged to be delivered to the CCJ, by plaintiff's girlfriend. Between June 18, 2009 and November 13, 2009, there were seventeen days on which plaintiff did not receive Atripla for unknown reasons. Plaintiff's enrollment in HDAP lapsed on October 31, 2009 and he ran out of Atripla on November 13, 2009.

Plaintiff submitted a note, dated November 7, 2009, to the nurse stating that he needed Atripla and reciting the name and phone numbers of the social worker who handled his HDAP enrollment. The note was stamped received by the jailer on December 7, 2009. Williams sent a response to plaintiff, dated December 10, 2009, stating that she was "checking on meds." There is some discrepancy in the record regarding the specific actions taken after this note was received. However, it is undisputed that jail personnel, including Williams and Sooter, were aware at some point that plaintiff was not receiving medication. It is not evident from the record whether Williams and Sooter were aware that plaintiff was unable to receive medication due to his lapsed enrollment in the HDAP program or whether Williams and Sooter believed that plaintiff's family had simply failed to deliver his refill. Regardless, it is undisputed that, on February 4, 2010, plaintiff was transported to Tulsa to get his blood work done and was subsequently re-enrolled in the HDAP program. It appears from the record that the CCJ received plaintiff's Atripla by February 23, 2010, as it was administered to him on that date and each day thereafter until his release.

It is undisputed that plaintiff was not given Atripla for approximately 115 days of his incarceration. It is further undisputed that, when he had blood work done on February 4, 2010, plaintiff's viral load had increased to 148,000. Finally, it is undisputed that, since his incarceration, plaintiff has been taking Atripla and his viral load has decreased to undetectable levels.

Plaintiff's amended complaint alleges the following claims for relief: (1) violation of the Eighth and Fourteenth Amendments to the United States Constitution, actionable through 42 U.S.C. § 1983; (2) invasion of privacy in violation of the Fourteenth Amendment to the United States Constitution and Oklahoma law; and (3) violation of Title II of the ADA. Plaintiff also alleges a state law claim against Williams for negligence. Plaintiff requests declaratory and injunctive relief,

4

nominal and compensatory damages against all defendants, and punitive damages against three individual defendants. The present motions deal with plaintiff's § 1983 claim, which was brought against Sooter in his official and individual capacities and against Williams in her individual capacity, and the state law negligence claim against Williams.

## II.

Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57, a court, "[i]n a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Whether or not to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the trial court." Kunkel v. Continental Casualty Co., 866 F.2d 1269, 1273 (10th Cir.1989). In effect, plaintiff's motion for a declaratory judgment is a motion for summary judgment on his request for a declaratory judgment. See Redmond v. Alexander, 98 B.R. 557, 559-560 (D. Kan. 1989).

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Plaintiff argues that the CCJ's failure to provide Atripla in a timely manner constituted a delay in medical treatment, which violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. The pending summary judgment motions deal with plaintiff's claim for retrospective relief, namely plaintiff's claim for damages for the prior alleged violation of his constitutional rights. Plaintiff's motion for a declaratory judgment, on the other hand, deals with plaintiff's claim for prospective relief, namely injunctive relief preventing the potential future violation of plaintiff's constitutional rights. Apart from this difference, the legal arguments made in the motions are substantially identical.

**A.     Summary Judgment Motions**

Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). In order to establish individual liability under § 1983, a plaintiff must show: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). A claim against a state actor in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents, and is considered under the standard applicable to § 1983 claims against municipalities or counties. Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010). In the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 482-83 (1986); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127-28 (1988). A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997)).

A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The test for constitutional liability of prison officials for a deliberate

indifference claim "involves both an objective and a subjective component." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). "The prisoner must first produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). The prisoner must also "present evidence of the prison official's culpable state of mind." Id. at 751. "The subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he or she] must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

"When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must show that the delay resulted in substantial harm."[3] Kikumura v. Osagie, 461 F.3d 1269, 1292 (10th Cir. 2006) (internal quotations omitted). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001); see also Mata, 427 F.3d at 755 (holding that plaintiff met substantial harm requirement by providing evidence of "both unnecessary pain and a worsening in her condition"). However, "not every twinge of pain suffered as a result of delay in medical care is actionable." Sealock, 218 F.3d at 1210.

---

[3]  Defendant argues that the substantial harm requirement is part of the subjective prong of the deliberate indifference query. Dkt. # 110 at 26. However, most of the cases within the Tenth Circuit address the substantial harm requirement as part of the objective prong. See e.g., Bradshaw v. Lappin, No. 11-1109, 2012 WL 2045762, at *4 (10th Cir. June 7, 2012); Kikumura, 461 F.3d at 1292; Mata, 427 F.3d at 751. Regardless, it is irrelevant at which point in the deliberate indifference analysis the substantial harm inquiry is made, as long as a court does in fact consider whether there has been substantial harm. See Bradshaw, 2012 WL 2045762, at *5.

It is undisputed that plaintiff had a sufficiently serious need for medical treatment in that he needed to be medicated for HIV. However, since the medication was eventually provided, the issue is whether the delay in providing the Atripla resulted in substantial harm.

Plaintiff argues that he suffered substantial harm because he experienced a "worsening of his condition as a result of the medication practice at the [CCJ]: his viral load was undetectable when he arrived at the [CCJ] on June 18, 2009, and after being denied anti-viral mediation for approximately 90 days, his viral load had skyrocketed to 148,000." Dkt. # 125 at 1-2. In addition, plaintiff relies on his expert's opinion, which states that "[s]toppage of this medication can lead to drug resistance, failure to control the underlying disease, and increased risk of infectious and non infectious mortality and morbidity." Dkt. # 99-15 at 6-7. While plaintiff's expert states that the stoppage of medication could have caused these adverse effects, there is no evidence in the record that plaintiff actually suffered any of these potential harmful side effects. In fact, defendants' expert explicitly states that plaintiff did not suffer any infection due to his lack of medication while incarcerated. Dkt. # 110-12 at 3. Plaintiff has not submitted any evidence to the contrary. Further, plaintiff is currently taking Atripla and his viral load has decreased to pre-incarceration levels. Defendants' expert states that this shows that plaintiff has not developed any drug resistance, and plaintiff has not submitted any evidence to contradict this assertion. Id.

Having reviewed the summary judgment record, the Court finds that plaintiff has not presented evidence of a disputed issue of material fact regarding the lack of substantial harm to plaintiff resulting from the delay in receiving Atripla. Plaintiff's viral count is again at undetectable levels and he has not provided any evidence that he suffered any infection or drug resistance because of temporarily being without medication. Further, plaintiff has not presented any evidence that he

9

endured any pain or suffering during the time that he was not given Atripla.[4] In the absence of evidence of any lifelong handicap, permanent loss, or considerable pain, plaintiff cannot prove that he suffered a substantial harm and his claim of deliberate indifference to his medical needs must fail.[5] See Harris v. Werholtz, No. 11-3160-SAC, 2012 WL 113607, at *5 (D. Kan. Jan. 13, 2012) (finding that failure to receive seizure medication did not result in substantial harm even though plaintiff suffered seizure in interim); Rix v. McClure, No. 10-1224-CM, 2011 WL 686182, at *4 (D. Kan. Feb. 18, 2011) (dismissing claim for delay in medical treatment because "simply being ill from lack of insulin is not enough to allege substantial harm"); Fisher v. Oba, No. 07-cv-00379-WDM-MJW, 2009 WL 29571, at *3 (D. Colo. Jan. 5, 2009) (granting summary judgment on claim for delay in medical care where plaintiff offered no evidence that he actually suffered any potential complications despite evidence of discomfort).

Plaintiff argues that he has shown substantial harm based on the fact that his viral count increased while he was not receiving his medication because this shows a "worsening of the condition." While the Tenth Circuit has stated that the "worsening of the condition" may result in

---

[4] The amended complaint alleges that plaintiff suffered from "stress, anxiety, frustration, anger, outrage, [and] sleeplessness" as a result of the delay in medical care. Dkt. # 30 at 10. Defendant argues that such psychological harm cannot be a basis for a finding of substantial harm on a deliberate indifference claim. The Court need not reach this issue because there is no evidence in the record that plaintiff suffered any psychological symptoms due to the delay in treatment, let alone any evidence that such psychological symptoms were so severe as to rise to the level of the substantial harm needed to show a constitutional violation.

[5] Even if plaintiff could show that the delay in medical treatment caused him substantial harm, it is unlikely that he could meet the subjective prong of the deliberate indifference test. Both Williams and Sooter testified that they were not familiar with HIV medications or the side effects of not taking them. Thus, there is no evidence upon which a jury could base a finding that Williams and Sooter were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" or that they "also [drew] the inference." Mata, 427 F.3d at 751.

10

substantial harm, this Court does not believe that phrase can be interpreted as broadly as plaintiff suggests. Plaintiff relies on Mata, in which the Tenth Circuit stated that plaintiff met the substantial harm standard by showing that "she suffered both unnecessary pain and a worsening in her condition – in the form of permanent and irreversible heart damage." Mata, 427 F.3d at 755. Thus, the Court did not find that a "worsening of the condition" in and of itself constituted substantial harm, but specifically noted that the delay of medical care resulted in a "permanent and irreversible injury." see also Rutherford v. Med. Dep't of Dep't of Corr., 76 F. App'x 893, 902 (10th Cir. 2003) (unpublished)[6] (holding that plaintiff stated a claim for deliberate indifference to serious medical needs where defendants' prescribed exercises "worsened his back condition" and plaintiff complained of "severe back pain"). Plaintiff has not cited any legal authority wherein substantial harm was found based on a temporary worsening of the condition that was later reversed, which did not also involve some permanent or irreversible injury or cause any pain and suffering.

**B.    Declaratory Judgment Motion**

Plaintiff seeks a declaratory judgment on his § 1983 claim. Specifically, plaintiff requests that a judgment be entered against the Board and Sooter in which the Court: (i) declares that "the practice of medication acquisition and administration" at the CCJ violated plaintiff's constitutional rights; (ii) compels the Board and Sooter to "implement policies and practices of medication acquisition and administration" that "address continuity of care throughout all phases of detention;" (iii) compels the Board and Sooter to implement a training program to ensure that staff is knowledgeable of these new policies and can implement them; and (iv) appoints a special master to supervise the implementation of these policies. Dkt. # 99 at 29-30.

---

[6]   Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

As an initial matter, the Court cannot enter a declaratory judgment against the Board on plaintiff's § 1983 claim because the Board was not named as a defendant in that claim. The amended complaint names only defendants Sooter and Williams as defendants in that claim. The Board is not mentioned in the section of the amended complaint that states a claim of a constitutional violation. See Dkt. # 30 at 10-12. Plaintiff argues that the Board can be liable under § 1983 because Oklahoma law imposes a duty on the Board to maintain adequate jail facilities. Dkt. # 125 at 7. However, this is irrelevant, as the Board is simply not named as a defendant in plaintiff's § 1983 claim. Thus, plaintiff's declaratory judgment motion is denied as to the Board.

As to plaintiff's request for a declaratory judgment that Sooter violated plaintiff's constitutional rights, this too must be denied. As discussed above, plaintiff has failed to set forth facts upon which a trier of fact could find that the delay in medical care caused plaintiff substantial harm. Because there is no basis on which to find that plaintiff's constitutional rights were violated, a declaration of such past violation is inappropriate.

Plaintiff's request for prospective relief, namely that the CCJ be ordered to change its policies such that plaintiff would not again be denied his medication, turns on whether there is an immediate threat that plaintiff will again be incarcerated at CCJ and will again be denied Atripla. Defendants argue that plaintiff's request for prospective relief is moot because plaintiff seeks a declaration regarding the circumstances of his incarceration and he is no longer incarcerated. Plaintiff states that the relief sought is not moot because he faces a "credible threat of arrest in Craig

County" due to an outstanding warrant for his arrest in Craig County for failure to pay court costs and/or fines.[7] Dkt. # 99 at 15.

The Supreme Court has held that prospective relief may be appropriate on a claim regarding conditions of confinement where a plaintiff shows "an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35 (1993). However, such relief is not appropriate if the issue is moot. "The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." Jordan v. Sosa, 654 F.3d 1012, 1023 (10th Cir. 2011) (internal quotation omitted). "The mootness doctrine relates to both the constitutional case or controversy requirement of Article III, as well as the prudential considerations underlying justiciability." Id. (internal quotations omitted). Accordingly, "[c]ourts recognize two kinds of mootness: constitutional mootness and prudential mootness." Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1121 (10th Cir.2010). "Under the constitutional mootness doctrine, the suit must present a real and substantial controversy with respect to which relief may be fashioned. Also, the controversy must remain alive at the trial and appellate stages of the litigation." Fletcher v. United States, 116 F.3d 1315, 1321 (10th Cir. 1997) (internal citations omitted). "Even if a case is not constitutionally moot, a court may dismiss a case under the prudential-mootness doctrine if the case is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold

---

[7] Plaintiff states that he is subject to "active arrests warrants." Dkt. # 99 at 15. However, the docket sheet for plaintiff's state court case shows only one warrant, issued on July 11, 2011. Dkt. # 99-16 at 7-8. Defendants do not dispute that plaintiff is subject to one active arrest warrant.

13

relief it has the *power* to grant." Rio Grande Silvery Minnow, 601 F.3d at 1121 (internal quotations omitted).

Where, as here, a plaintiff requests equitable relief, he must demonstrate a "likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." O'Shea v. Littleton, 414 U.S. 488, 499 (1974). "Moreover, a plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations take it into the area of speculation and conjecture." Jordan, 654 F.3d at 1024 (internal quotations omitted). There must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

The Tenth Circuit has held that "where a prisoner is no longer housed at the penal institution having the conditions of confinement that form the basis of his suit, declaratory relief - as well as injunctive relief - is ordinarily not available." Jordan, 654 F.3d at 1028 n.17. "Because a prisoner's transfer or release signals the end of the alleged deprivation of his constitutional rights, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him." Id. at 1027 (internal quotations and citations omitted). The Tenth Circuit has further held that prior claims regarding conditions of confinement are moot even where a plaintiff argues that he may be subject to the same practices in the future because he could be transferred back to the allegedly offending prison or because he is subject to parole or conditions of supervised release. See id. at 1032 (finding transferred inmate's claim moot where "there is no concrete prospect that [plaintiff] will be returned to any of those facilities in the foreseeable future" and his argument "is entirely speculative"); McAlpine v.

14

Thompson, 187 F.3d 1213, 1218 (10th Cir. 1999) (holding that "release to parole moots a claim regarding *prison* conditions and regulations"); see also Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997) (holding that plaintiff's "claims for declaratory and injunctive relief are moot" because "he is no longer a prisoner within the control of the [defendants]").

In such a situation, courts "are disinclined to opine on important constitutional issues based upon the speculative suggestion that a plaintiff might be returned to a setting where he would be subject to allegedly unconstitutional practices." Jordan, 654 F.3d at 1032; see also Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1349 (10th Cir. 1994) ("a plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future") (internal quotations omitted). Furthermore, courts are "unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." McAlpine, 187 F.3d at 1217; see also O'Shea, 414 U.S. at 497 ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners.").

It is undisputed that there is an active arrest warrant for plaintiff in Craig County based on his failure to pay court costs and/or fines. Plaintiff argues that this demonstrates a credible threat that he will again be detained in the CCJ and will again be denied medication. However, in order to make the determination that plaintiff will be again subjected to the medication distribution policies of the CCJ, this Court would have to assume: (i) that plaintiff will not pay the court costs and/or fines that he owes; (ii) that plaintiff will actually be arrested in Craig County or arrested elsewhere and transferred to the custody of Craig County; and (iii) that the CCJ will again deny

plaintiff his Atripla.[8]  The Court can not grant declaratory or injunctive relief based on such a hypothetical chain of events.  There is no circumstance present in this case that raises plaintiff's claim of a potential future constitutional violation above a merely speculative level.  This is especially true in light of the fact that the Court is unwilling to assume that plaintiff will repeat the misconduct of failing to pay the court costs and/or fees that he owes.  McAlpine, 187 F.3d at 1217.  Thus, the Court finds that plaintiff's claim is both constitutionally and prudentially moot.

**C.    State Law Claim against Williams**

Defendant Williams argues that the state law negligence claim against her must be dismissed because she is immune from suit pursuant to the Oklahoma Governmental Tort Claims Act, OKLA STAT. tit. 51, § 151 et seq.  Plaintiff did not address this argument in his response to Williams' motion.[9]

The Oklahoma Governmental Tort Claims Act states, in pertinent part, that:

> Suits instituted pursuant to the provisions of this act shall name as defendant the state or the political subdivision against which liability is sought to be established.  In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . . .

OKLA STAT. tit. 51, § 163(C).  Thus, no claim arising from the performance of Williams' duties may be made against her individually, because "'scope of employment' claims against employees are

---

[8]   This third assumption is particularly attenuated given the undisputed fact that plaintiff was incarcerated in the CCJ for six days in February 2012 during which time he was given Atripla daily.

[9]   The Court notes that the "negligence claim" against Williams is mentioned only as an apparent afterthought in the amended complaint, in which plaintiff states that "at the very least [Williams'] actions constitute negligence under state law." Dkt. # 30 at 12.  It is not clear that this sentence would have been sufficient to survive a motion to dismiss the negligence claim for failure to state a claim.  However, as defendant did not move to dismiss the claim, the Court need not examine the issue.

16

prohibited by § 163(C) of the Act." Covey v. Lexington Pub. Sch., No. CIV-09-1151-M, 2010 WL 5092781, at *4 (W.D. Okla. Dec. 7, 2010) (internal quotation omitted). Plaintiff has not argued that Williams was acting outside the scope of her employment as the nurse for CCJ and there are no facts on which to base such a finding. Because the Oklahoma Governmental Tort Claims Act prohibits suit against a government employee acting within the scope of her employment, Williams is entitled to summary judgment on the negligence claim.

**IT IS THEREFORE ORDERED** that Plaintiff's Partial Motion for Declaratory Judgment (Dkt. # 99) is **denied**; plaintiff's Partial Motion for Summary Judgment (Dkt. # 100) is **denied**; Defendant Sooter's Motion for Summary Judgment and Brief in Support (Dkt. # 121) is **granted**; and Defendant Williams's Motion and Brief for Summary Judgment (Dkt. # 122) is **granted**. Defendants Jimmy Sooter and Sheila Floyd Williams are terminated as party defendants.

**DATED** this 12th day of July, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE