# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-0298-CVE-PJC |
| ) | |
| BOARD OF COUNTY COMMISSIONERS ) | |
| OF CRAIG COUNTY, ) | |
| and JOHN DOES # 1-10, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court are Defendant Board of County Commissioners of Craig County's Motion for Summary Judgment and Brief in Support (Dkt. # 118) and plaintiff's Partial Motion for Summary Judgment (Dkt. # 120). The parties each move for summary judgment on plaintiff's claim for violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. (ADA), which is the last remaining claim in this case.

## I.

On June 18, 2009, plaintiff John Doe[1] was arrested in Vinita, Oklahoma for driving under the influence of alcohol. Plaintiff was transported to the Craig County Jail (CCJ) for booking. Shortly after plaintiff's arrest, plaintiff's girlfriend arrived home to find a Vinita police officer in her yard. The officer informed plaintiff's girlfriend that plaintiff had been arrested. Plaintiff's girlfriend then gave the officer plaintiff's medications, including Atripla, which plaintiff takes daily because

---

[1] Plaintiff has previously been granted permission to prosecute this case under the pseudonym of John Doe. Dkt. # 23.

he is HIV positive. Plaintiff's girlfriend testified in her deposition that she did not recall whether she told the officer that plaintiff was HIV positive.

It is undisputed that, during the booking process, plaintiff invoked his right to remain silent and refused to answer questions about any medical conditions. The medical questionnaire completed at the time of booking asks: "Do you have AIDS or are you HIV positive?" Plaintiff's questionnaire indicates a response of "no" to this question. However, neither plaintiff nor the booking officer signed the questionnaire in the space provided. Dkt. # 118-1 at 5. Plaintiff testified that he did not tell the CCJ staff that he was HIV positive while he was being booked. There is evidence that the medication plaintiff's girlfriend gave the police officer was delivered to the jail during plaintiff's booking. The questionnaire states that plaintiff was on medication, including Atripla. Plaintiff also testified that he recalled the police officer "counting my meds" during booking. Dkt. # 118-2 at 2.

It is undisputed that, at some point during the booking process, plaintiff had an altercation with a deputy sheriff, during which plaintiff may have either pushed or kicked the deputy. Jail Administrator Rusty Satterwhite testified that, after the altercation, he approached plaintiff and told him that if he was going to cause trouble he would be put in lock down. Dkt. # 118-4 at 3. Satterwhite testified that plaintiff requested to be put into the trustee unit. Id. Satterwhite further testified that he told plaintiff he could not be put into the trustee unit, but he could go into general population. Plaintiff then allegedly told Satterwhite that he wanted to be put in isolation. Id. Plaintiff testified that he does not recall having a conversation with Satterwhite during his booking and that he never told any jail staff that he wanted to be put in isolation. Dkt. # 130-1 at 20.

It is undisputed that, at the conclusion of the booking process, plaintiff was placed in isolation and remained there until September 18, 2009, at which point he was moved to a segregation cell within the general population area. Plaintiff remained in segregation until his release on February 26, 2010.

Plaintiff testified in his deposition that he does not know why he was placed in isolation. However, another inmate testified that plaintiff later told him that he was placed in isolation because of the altercation with the officer. This inmate also testified that, at some point, he heard Satterwhite say that plaintiff was in isolation because he was HIV positive. Another inmate testified that he was later told by jail staff that plaintiff was in isolation because of the altercation with the police officer. Terry Martin, a former jailer at the CCJ, submitted a declaration in which he states that, "based on conversations with jail staff, including [Satterwhite], I discovered that [plaintiff] was being isolated because he was HIV positive." Dkt. # 130-4 at 1.

Plaintiff testified that, as a result of being in isolation, he was denied certain services or programs that were generally available to other inmates such as: showers, outdoor recreation, religious services, television, prescription medication, and participation in the trustee program. Satterwhite, on the other hand, testified that plaintiff had equal access to all of the jail's programs and services other than being a trustee.

Prior to his incarceration, plaintiff was receiving Atripla through the HIV Drug Assistance Program (HDAP), which is a federally funded program that provides HIV medication to persons who are HIV positive and have demonstrated a financial need. HDAP requires that a participant periodically re-enroll in the program. In order to re-enroll in the program, the participant is required to have blood work done. At the time of his arrest, plaintiff was required to re-enroll in HDAP every

3

three months. Plaintiff had his re-enrollment paperwork and blood work done shortly prior to his arrest on June 18, 2009, and he was officially re-enrolled in HDAP on July 13, 2009. From the time of his arrest until November 13, 2009, plaintiff had a valid prescription for Atripla through the HDAP program and the medication was provided to the CCJ, or arranged to be delivered to the CCJ, by plaintiff's girlfriend. Between June 18, 2009 and November 13, 2009, there were seventeen days on which plaintiff did not receive Atripla for unknown reasons. Plaintiff's enrollment in HDAP lapsed on October 31, 2009 and he ran out of Atripla on November 13, 2009.

Plaintiff submitted a note, dated November 7, 2009, to the nurse for CCJ stating that he needed Atripla and containing the name and phone numbers of the social worker who handled his HDAP enrollment. The note was stamped received by the jailer on December 7, 2009. The nurse sent a response to plaintiff, dated December 10, 2009, stating that she was "checking on meds." There is some discrepancy in the record regarding the specific actions taken after this note was received. However, it is undisputed that jail personnel, including the nurse and the Sheriff, were aware at some point that plaintiff was not receiving medication. It is not evident from the record whether the nurse or the Sheriff were aware that plaintiff was unable to receive medication due to his lapsed enrollment in the HDAP program or whether they believed that plaintiff's family had simply failed to deliver his refill. Regardless, it is undisputed that, on February 4, 2010, plaintiff was transported to Tulsa for blood work and was subsequently re-enrolled in the HDAP program. It appears from the record that the CCJ received plaintiff's Atripla by February 23, 2010, as it was administered to him on that date and each day thereafter until his release.

It is undisputed that plaintiff was not given Atripla for approximately 115 days of his incarceration. Plaintiff presents evidence, in the form of CCJ requisition forms, indicating that,

4

during plaintiff's detention, approximately 63 prescription medications were purchased for other inmates. The cost of these medications ranged from $3.00 to $1,055.40, with at least six of these prescriptions costing the CCJ in excess of $400 each. Plaintiff states that, if the CCJ had refilled his Atripla without using the HDAP program, it would have cost the CCJ in excess of $750. Martin states in his declaration that the CCJ nurse "did not want to use the jail funds to purchase HIV medication because it was too expensive." Dkt. # 130-4 at 2. Martin also states that the Sheriff "refused to authorize the purchase" because "the medication was too expensive." Id.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the

5

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

While plaintiff and defendant have each moved for summary judgment on plaintiff's ADA claim, the motions address different theories of ADA violation. Defendant's motion argues that plaintiff was not placed in isolation because of his HIV status; thus, his placement in isolation did not violate the ADA. Plaintiff argues that the ADA was violated by plaintiff not receiving medication due to his HIV status.

Title II of the ADA provides in part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This provision extends to discrimination against inmates detained in a county jail. See Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998) (holding that "[s]tate prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government'") (quoting 42 U.S.C. § 12131(1)(B)). To prevail on a claim under Title II, the plaintiff must prove that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of

6

benefits, or discrimination was by reason of a disability. See Gohier v. Enright, 186 F.3d 1216, 1219 (10th Cir. 1999). The Supreme Court has held that being HIV positive is a disability under the ADA. See Bragdon v. Abbott, 524 U.S. 624 (1998); see also Hardeman v. Sanders, No. 08-CV-086-RAW-SPS, 2009 WL 590738, at *9 (E.D. Okla. March 5, 2009). Thus, it is undisputed that plaintiff is a qualified individual with a disability and has proved the first element of the test.

### A. Placement in Isolation/Segregation[2]

Defendant argues that plaintiff cannot establish the second element of an ADA violation because, "while in segregation, [plaintiff] was provided access to every service, program or benefit that any other inmate in segregation received." Dkt. # 118 at 12. However, this argument ignores plaintiff's position that, by virtue of being in segregation, he was denied access to benefits and services that were available to the general population. The Court finds that there is a disputed issue of material fact on this point that precludes summary judgment. Plaintiff testified that he was denied access to specific benefits, whereas Satterwhite testified that plaintiff was not denied access to any benefits. This is precisely the type of factual dispute that must be decided by a jury.[3]

There is also a disputed issue of material fact as to the third element of an ADA violation, whether any exclusion or denial of benefits was because of plaintiff's HIV status. Plaintiff alleges

---

[2] The evidence shows that plaintiff was placed in "isolation" between June 18, 2009 and September 18, 2009, on which date he was transferred to "segregation," where he remained until his release on February 26, 2010. While it is not clear from the parties' briefs, the Court presumes that plaintiff is alleging a continuous violation based on his isolation and segregation until February 26, 2010.

[3] Plaintiff requests that, because defendant does not directly address the argument that plaintiff was denied access to the same benefits as the general population, the Court "find that plaintiff has conclusively established" the second element of an ADA violation. Dkt. # 130 at 7. However, such a conclusive finding is inappropriate where there is a disputed issue of material fact.

7

that he was placed in isolation because of his HIV status. As an initial matter, it is not clear from the record when jail staff knew that plaintiff was HIV positive. The medical questionnaire does not indicate that plaintiff told the booking officers his HIV status, and plaintiff admits that he did not tell them of his HIV status during booking. However, plaintiff's girlfriend had given plaintiff's HIV medication to the officer and stated that she does not recall whether she informed the officer of plaintiff's HIV status. The Court finds that, based on these facts, there is evidence from which a jury could infer that the booking officers knew of plaintiff's HIV status due to his medication and/or conversation with the girlfriend.

However, Satterwhite testified that plaintiff was placed in isolation because he requested it. Plaintiff stated that he never requested isolation and did not recall a conversation with Satterwhite on the night of his arrest. Martin stated in his declaration that, based on conversations with Satterwhite, he believed plaintiff was placed into isolation because of his HIV status. The record is further complicated by testimony from two other inmates who have different stories about the reasons they were told plaintiff was placed into isolation. This, again, is precisely the type of disputed issue of material fact that must be decided by a jury.

For these reasons, summary judgment is inappropriate as to whether there was a violation of the ADA based plaintiff's placement in isolation/segregation.

**B.      Failure to Receive Medication**

Plaintiff argues that the CCJ purchased prescription medication for other inmates, but that he was denied access to this practice because he was HIV positive. Plaintiff states that, by virtue of his HIV status, he "was subjected to the practice that denied medication, and he was subjected to that practice because the Defendant did not want to pay for it." Dkt. # 120 at 12.

8

In his reply, plaintiff argues, for the first time, that "evidence supports liability for all three theories of recovery under Title II [of the ADA]" - disparate treatment, disparate impact, and failure to accommodate. Dkt. # 146 at 4. Plaintiff's motion for summary judgment, however, is based on a theory of disparate treatment only. In fact, the subtitle of plaintiff's "Argumment [sic] and Authority" section of its motion is "Board Denied Prescriptive Services to Doe <u>Based Upon his Disability</u>." Dkt. # 120 at 9 (emphasis added). This wording suggests only a direct discrimination theory - that plaintiff was denied access based on his disability. The motion does not argue that defendant violated the ADA by means of a neutral policy having a disparate impact on the disabled, nor does it argue that plaintiff was not accommodated based on a disability.[4] There is nothing in the motion that would put defendant on notice that plaintiff was moving for summary judgment based on a disparate impact or failure to accommodate theory. The Court declines to consider an argument raised for the first time in a reply. See <u>United States v. Harrell</u>, 642 F.3d 907, 918 (10th Cir. 2011) ("arguments raised for the first time in a reply brief are generally deemed waived").

In addition to not being raised in the motion, these theories of recovery were not raised in plaintiff's complaint or amended complaint. Even in plaintiff's recent motion to amend his complaint, which was denied, plaintiff did not seek to add disparate impact or failure to accommodate theories of recovery. The general rule is that "a plaintiff should not be prevented from pursuing a valid claim just because [he] did not set forth in the complaint a theory on which [he] could recover, provided always that a late shift in the thrust of the case will not prejudice the other

---

[4] There is one sentence in plaintiff's motion that could be construed to refer to a disparate impact claim. In the section of the motion entitled "Conclusion," plaintiff states that the CCJ's practice "disproportionately affects inmates who are HIV positive and actively treating their disease with costly antiviral medication." Dkt. # 120 at 12. However, one sentence in a conclusion is not sufficient to put defendant on notice that plaintiff is moving for summary judgment on a disparate impact theory.

9

party in maintaining his defense upon the merits." Evans v. McDonald's Corp., 936 F.2d 1087, 1090-91 (10th Cir. 1991). Thus, insertion of new theories of relief into summary judgment briefing is generally prohibited. See e.g., Spencer v. Wal–Mart Stores, Inc., 203 F. App'x 193, 196 n.2 (10th Cir. 2006) (holding that raising a new theory of liability "in a response to a summary judgment motion does not properly present a claim to the district court for review, and accordingly the district court did not err in ignoring this claim in its order") (unpublished);[5] Orr v. City of Albuquerque, 417 F.3d 1144, 1153 (10th Cir. 2005) (holding that district court did not abuse its discretion in refusing to consider theory of recovery raised for first time in response to summary judgment motion). In considering the propriety of introducing of a new claim at a late stage of litigation, the Tenth Circuit has balanced the liberal pleading standard with potential prejudice faced by the defendant. See Green Country Food Mkt., Inc. v. Bottling Grp., LLC, 371 F.3d 1275, 1279 (10th Cir. 2004).

Here, defendant was not put on notice in the complaint or amended complaint that plaintiff sought recovery under theories of disparate impact or failure to accommodate. The section of the amended complaint regarding the ADA claim repeatedly alleges that defendant was denied services "because of his medical condition" and does not allege that there were neutral services with a disparate impact or that defendant failed to accommodate plaintiff. See Dkt. # 30 at 13-14. These theories were not raised until plaintiff's summary judgment reply. Thus, defendant had no opportunity to respond to these arguments, let alone to conduct discovery or present evidence regarding them. For these reasons, the Court finds that plaintiff's claims of disparate impact and failure to accommodate were not properly raised and these claims will not be addressed.

---

[5] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

The Court now turns to the merits of plaintiff's claim of discrimination based on failure to receive prescription medication refills. As noted above, plaintiff argues that defendant discriminated against him on the basis of his HIV by denying him medications because they were too expensive. Defendant argues that, based on plaintiff's own admission and evidence, any denial of medication prescription services was not based solely on plaintiff's HIV status, but was also based on cost. In support of this proposition, defendant relies on <u>Fitzgerald v. Corr. Corp. of Am.</u>, 403 F.3d 1134 (10th Cir. 2005), which states that "[u]nder either the ADA or the Rehabilitation Act, [plaintiff] is obligated to show that he was otherwise qualified for the benefits he sought and that he was denied those solely by reason of disability." <u>Id.</u> at 1144 (internal quotations omitted).

Plaintiff argues that this is the improper legal standard because the statutory language of the ADA does not require that plaintiff show he was discriminated against "solely" by reason of a disability. <u>See</u> 42 U.S.C. § 12132. Plaintiff further argues that <u>Fitzgerald</u> was relying on a case, <u>Johnson by Johnson v. Thompson</u>, 971 F.2d 1487, 1492 (10th Cir. 1992), which was interpreting the Rehabilitation Act, 29 U.S.C. §§ 701 <u>et</u> <u>seq.</u>, and the Rehabilitation Act <u>does</u> require that plaintiff show he was discrimination against "solely by reason of" a disability. 29 U.S.C. § 794(a).

Plaintiff is correct that <u>Fitzgerald</u> cites to <u>Johnson by Johnson</u> for the proposition that plaintiff is obligated to show that he was denied benefits "solely by reason of disability." <u>Fitzgerald</u>, 403 F.3d at 1144. However, <u>Johnson by Johnson</u> is cited in <u>Fitzgerald</u> merely as an example ("<u>see, e.g.</u>,") of the proposition and does not appear to be an exhaustive citation of authority on which the Court was relying. <u>Id.</u> Further, the language in <u>Fitzgerald</u> clearly sets forth the Tenth Circuit's intent to apply this standard to ADA claims as it says, "[u]nder <u>either</u> the ADA <u>or</u> the Rehabilitation

11

Act," a plaintiff is required to prove that he was denied benefits "solely by reason a of disability." Id. (emphasis added). This conclusion is supported by the fact that subsequent cases in this Circuit have similarly stated that a plaintiff must show that discrimination was the sole reason for denial of benefits in order to prevail on ADA claim. See Breedlove v. Costner, 405 F. App'x 338, 341 (10th Cir. 2010) ("Because Mr. Breedlove did not allege that he had been denied services that have been provided to other prisoners or otherwise allege discrimination solely based on his asserted disability, he did not state a claim under the ADA and the district court properly dismissed his claim.") (unpublished);[6] Hughes v. Colo. Dep't of Corr., 594 F. Supp. 2d 1226, 1244 (D. Colo. 2009) (dismissing ADA claim because plaintiff did not allege that he was denied benefits "solely by reason of [his] alleged disability"); see also Amirault v. City of Roswell, No. 6:95-CV-422 MV/RLP, 1996 WL 391986, at *5 (D.N.M. July 11, 1996) (granting summary judgment to defendant on ADA claim where plaintiff "failed to identify any police service, program, benefit, or activity to which he was entitled under the ADA and which was denied to him solely because of his disability").

Thus, in order to prevail on his ADA claim based on denial of medication, plaintiff is required to show that he was denied access to medication "solely by reason of disability." Fitzgerald, 403 F.3d at 1144. Plaintiff admits that the denial of his medication was based at least in part on the cost of the medication. Dkt. # 120 at 12. Plaintiff has failed to set forth any facts from which a reasonable jury could find that he was denied medication based solely on his HIV status. Although plaintiff moved for summary judgment on this ground (which is denied), defendant did not. Therefore, the Court will not sua sponte enter summary judgment in favor of defendant on this theory of recovery, but this finding constitutes law of the case.

---

[6]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

**IT IS THEREFORE ORDERED** that Defendant Board of County Commissioners of Craig County's Motion for Summary Judgment and Brief in Support (Dkt. # 118) is **denied,** and plaintiff's Partial Motion for Summary Judgment (Dkt. # 120) is **denied**.

**DATED** this 16th day of July, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE